# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

-vs-                                    Case No.  8:08-cv-1782-T-24-TBM

TERRY FALCONE, et al.,

        Defendant.

_____/

## ORDER

This cause comes before the Court on cross-motions for summary judgment filed by Plaintiff  United States of America and Defendant Alumni Partners II, LLC (Docs. 9 & 20). Each party has filed a response in opposition to the opposing party's motion.  (Docs. 20 & 22.)

## INTRODUCTION

Each party holds a lien on property owned by Terry Falcone.  Plaintiff seeks to foreclose its lien.  Plaintiff and Defendant each believe that their lien is superior to the lien held by the opposing party.  The issue to be decided is whether a United States judgment lien, perfected on May 21, 2007, or a state tax sale certificate lien, purchased on May 31, 2008 but based on state taxes assessed in 2007, has priority.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving

party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006).  The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Id.  When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.  Id.

## BACKGROUND

In April of 2007, Hernando County assessed property taxes on certain land owned by Terry Falcone.  (Doc. 20  ¶ 6; Doc. 22, p. 3.)  When property taxes are assessed, they become a first lien on the land against which they are assessed.  Because the taxes were still unpaid in April 2008, those taxes became delinquent, triggering the creation of a state tax sale certificate, an instrument allowing the state to sell its property tax lien.  See id.; Fla. Stat. §§ 197.122(1); (Doc. 20, ¶ 6; Doc. 22, p. 3).  On May 31, 2008, Defendant Alumni purchased the state tax sale certificate from Hernando County.  (Id. ¶ 8; Doc. No. 8, p. 6.) This purchase gave Defendant a tax lien on the Falcone properties.  28 U.S.C. § 3201(a).

On May 21, 2007, Plaintiff filed with Hernando County the abstract of a judgment it obtained against Ms. Falcone under 31 U.S.C. § 3713(b) for 1.9 million dollars.  (Compl. ¶¶ 17–18l; Doc. 22, p. 3.)  This act gave Plaintiff a federal judgment lien on all of Ms. Falcone's property within the County, including that property associated with the delinquent 2007 property

taxes.  *See* 28 U.S.C. § 3201(a).

Plaintiff now seeks to foreclose its judgment lien on all of Ms. Falcone's Hernando County properties, including that encumbered by Defendant's state tax sale certificate lien, and names Defendant as a party to the action. (Compl.)  Defendant Alumni insists that it is improperly joined in the action, because it is not a junior lien-holder, but a senior one.  (Doc. 20.)

Plaintiff claims that, because the United States' judgment lien was perfected before the state tax sale certificate was acquired, the judgment lien is senior to the tax sale certificate lien. (Doc. 9.)  Defendant claims that, because state tax liens relate back to January 1st of the year that the delinquent taxes were assessed, the state tax sale certificate lien primes the judgment lien. (Doc. 20.)  Both parties have moved for summary judgment as to the priority of their respective liens. (Docs. 9, 20.)


## DISCUSSION

### A. *First in Time, First in Right*

When a lien-holder seeks to foreclose on a property, he must join junior lien-holders to the action.  Wood v. Franklin Life. Ins. Co., 17 F.2d 80, 80 (5th Cir. 1927). However, because senior lien-holders' interests remain unaffected, they need not be joined.  Id.; Cone Bros. Const. Co. v. Moore, 193 So. 288, 289–90 (Fla. 1940).

When a federal law and state law conflict, the federal law preempts its state rival. U.S. Const. art. VI, cl. 2; *Gibbons v. Ogden*, 22 U.S. 1 (9 Wheat.) 1 (1824) (Marshall, C. J.).  Florida law provides that tax certificates become a "first lien . . . superior to all other liens," on real

property against which the taxes have been assessed.  Fla. Stat. § 197.102(3).  However, Federal

law states that a United States' judgment lien shall have priority over any other lien or

encumbrance that is perfected later in time. 28 U.S.C. § 3201(b). Federal law trumps state law

that dares to clash with it.  Therefore, a federal lien will have priority over a state tax lien if the

state tax lien is perfected subsequent to the perfection of the federal lien.  See, e.g., More v.

United States, 505 F. Supp. 612, 614 (N.D. Fla. 1980).  Thus, the law becomes simple: between

a federal judgment lien and a state tax lien, priority is awarded to that perfected first in time.

### B.  *Determining Who was "First in Time"*

#### 1.  The Tax Lien System

Determining which lien was perfected "first in time" in the present case is far more

complex than suggested by the simplistic phrasing of the question itself.  There is no dispute that

the United States' judgment lien was perfected on May 21, 2007.  Instead, the issue is: On what

date was the lien represented in the state tax certificate perfected?

**Florida county tax collectors are responsible for the collection of real property**

**taxes.**  Fla. Stat. § 197.332.  The amount of taxes owed by a property owner becomes due on

November 1st of the year the taxes are assessed.  Fla. Stat. § 197.333.  Local county

governments are given liens on real property against which any taxes have been assessed, and

those liens "shall continue in full force from January 1 of the year the taxes were levied until

discharged by payment."  Fla. Stat. § 197.122(1).

If real property taxes are not paid by "April 1st following the year in which they are

assessed or immediately after 60 days have expired from the mailing of the original notice,

which ever is later," the taxes become delinquent.  Fla. Stat. § 197.333.  In such a case, the

4

county tax collector is required to create a tax sale certificate and hold a sale of that certificate. Fla. Stat. § 197.432(1). The tax sale certificate is a "legal document, representing unpaid delinquent real property taxes . . . issued . . . against a specific parcel of real property and becoming a first lien thereon, superior to all other liens ." Fla. Stat. § 197.102(3).

The state tax-lien structure demonstrates that state tax liens are considered perfected dating from January first of the year the delinquent taxes are first assessed. See, e.g., Fla. Stat. § 197.122(1); Trout Creek Props., LLC v. Akerman, Senterfitt & Eidson, PA, 294 F. Supp. 2d 1280. 1285, 1288 (M.D. Fla. 2003) (explaining that the lien date for ad valorem taxes dates back to January 1st of the year the taxes are assessed under Fla. Stat. § 197.122(1)); In re Chief Charley's, Inc., 122 B.R. 785, 786 (M.D. Fla. 1990) (noting that a state tax lien based on taxes assessed in 1989 but not delinquent until April of 1990 attached to the property in January of 1989 as a lien "superior to all other liens" via a "relation back concept.")

However, in order to determine the date of perfection for state tax sale certificates, it must be decided whether the purchase of a certificate represents the assignment of the state tax lien, taking on the perfection date of that lien, or whether the sale creates a new lien. If the former, the tax sale certificate lien primes the federal judgment lien in the present case. If the latter, the reverse is true. The Court holds that the sale of a state tax certificate is the assignment of the perfected state tax lien, and thus the resulting lien assumes the same perfection date.

### 2. Assignment of State Tax Lien by Certificate

Plaintiff claims that "a separate, specific statutory lien arises for tax sale certificate holders, such as Alumni," and that "[u]nder Florida law, a tax certificate lien arises when the certificate is purchased." (Doc. 22, p. 5.) The Court finds the law regarding this point to be

ambiguous, but ultimately antithetical to Plaintiff's assertion.

### a.  Statutory Language

Plaintiff bases its first argument against construing a tax certificate lien as an assignment of a state tax lien, on statutes discussing the enforcement or foreclosure of certificate liens.  Fla. Stat. §§ 197.122(2); 197.432(2).  These statutes refer to the liens being enforced or foreclosed as those "created by" the state tax sale certificate.  Id.  However, this language, taken in context, is not dispositive of the question at hand.   In fact, notwithstanding this language (which is primarily used as a precursor to discuss the disposition, rather than the creation, of the liens), courts have time and time again held that state tax certificate liens, like the state tax liens on which they are based, date back to January first of the year in which the taxes were assessed. See, e.g., United States v. Atlantic Municipal Corp., 212 F.2d 709, 710–11 (5th Cir. 1954) (finding that the lien based on a state tax certificate purchased in 1950 for delinquent 1949 taxes was a "perfected and choate lien" that pre-dated the United States' tax lien, which was perfected May 31, 1949); Sims v. Smith, 502 F.Supp. 609, 610 (N.D. Fla. 1980) (noting that the holder of a state tax sale certificate issued in 1974 had been a lien-holder in 1973, the year the taxes were assessed).

Further, common sense leads to the conclusion that a tax certificate lien would assume the perfection date of the tax lien on which it is based.  There is no question that the state tax certificate liens are connected to the state tax liens themselves.  See, e.g., Fla. Stat. § 197.102(3) (stating that the tax sale certificate is a "legal document, *representing* unpaid delinquent real property taxes") (emphasis added)).  Because the state is forced to create a state tax sale certificate, selling it in exchange for its lien rights, it makes sense that the certificate lien would

have similar properties to those of the lien from which it springs.

　　　Given (1) that the statutory language cited by Plaintiff to counter the assignment theory is derived from clauses not directly on-point,[1] (2) the implications of the statutory scheme as a whole, and (3) that precedent consistently finds certificate-holders to be lien-holders from the date on which the state tax lien takes effect, the Court finds that the tax-lien statutes indicate that a state tax certificate represents the assignment of a state tax lien.

b. More v. United States

　　　Plaintiff cites More v. United States, 505 F. Supp 612 (N.D. Fla. 1980), to counter the argument that the perfection date of a certificate lien relates back to the date the state tax lien took effect.  (Doc. 22, pp. 12, 15.)  Although More does refer to a certificate lien as one "created by" a state tax sale certificate, id. at 614, the facts developed in, and the holding of, the More opinion are insufficient to support Plaintiff's position.  More holds that, under the specific circumstances of the case, a lien held by the Federal government primed a lien held by More under a state tax  certificate.  The tax certificate was acquired in 1974 and was the result of unpaid taxes for the 1973 year.  Id. at 613.  The Government's lien referenced in the case was from a United States Marshal's Deed issued in 1978 as the culmination of a mortgage foreclosure action.  Id.  The More court *acknowledges that More was a lien-holder in 1973*—language *favoring Defendant* in this case—but says that the Government's lien also applied in 1973 and was superior.  Id.  The court never states when the lien represented in the

---

[1] Should this debate be waged through the proxies of statutes and cases not wholly on-point, the Court notes that Fla. Stat. § 197.462 refers to the sale of a tax sale certificate between individuals as an "assignment" of the lien.  Further, dicta in other case law describes the purpose of a tax sale certificate as "provid[ing] a means for evidencing the assignment of [a] tax lien." Gautier v. Crescent City, 138 Fla. 573, 580 (1939).

1978 deed was created, just that it primed a lien that arose in 1973.[2]  Thus, <u>More</u> cannot inform the Court's ruling here.

c. Relation Back, Perfection, and Inchoateness

Plaintiff next argues that, even if a tax certificate lien related back to the date of the underlying tax lien, the perfection of liens can never relate back in order to defeat a lien actually perfected on a on a date prior to the issuance of the tax certificate.  Plaintiff cites <u>United States v. Allen</u>, 328 F.2d 377 (5th Cir. 1964), to support this proposition.  (Doc. 22, pp. 14–15.)  This case, however, dealt with whether a state court's subject-matter jurisdiction over property could be retroactively applied in order to defeat the perfection of a federal lien   <u>Allen</u>, 328 F.2d at 378–79.  While the court did say that an inchoate lien cannot relate back after its perfection to defeat a previously-perfected federal tax levy, that statement is dicta.  <u>Id.</u>[3]  Further, for reasons discussed below, the lien represented in a state tax sale certificate is not inchoate, and thus <u>Allen</u> would not apply, even were the language cited by Plaintiff the holding of the case.

Plaintiff argues that state tax certificate liens are inherently unperfected and points to both the process for enforcing those liens as well as the state of Florida's construction of those liens as indicative of the liens' inchoate status.

---

[2]  In the almost identically-worded but more fully expounded <u>Sims v. Smith</u>, 502 F.Supp. 609 (N.D. Fla. 1980), the court adjudicated a similar situation between a federal lien spawned from a Unites States Marshal's Deed issued in 1974 and a "deed founded upon a tax certificate" issued in 1974 based on taxes assessed in 1973.  The United States' lien was held superior because, while the tax sale certificate lien-holder *had been a lien-holder since 1973*, the United States lien—though represented in a deed issued in 1974—was created in 1971.  <u>Id.</u>  at 610.

[3]  To answer any unraised argument as to the fairness of allowing a later lien to prime a previously-perfected lien, it should be noted that this is not an anomalous practice.  The Uniform Commercial Code admits such re-ordering as common practice in the case of purchase money security interests and mechanics' liens, for example.

First, Plaintiff argues that because a state tax certificate lien is not summarily enforceable, requiring a two-year waiting period during which the lien is subject to redemption by the owner, the lien is not perfected.  (Doc. 22, pp. 7, 12–13.)  This argument ignores the fact that pre-conditions—such as defaults on loans or redemption periods required prior to foreclosure—are contingencies common to many undisputedly-perfected liens on real property. Thus, pointing out the contingent enforcement rights of a tax certificate lien is not the dispositive argument that Plaintiff suggests.

Next, Plaintiff argues that states have the power to conclusively say whether state liens are *un*perfected.  Plaintiff is correct.  <u>Illinois ex rel. Gordon v. Campbell</u>, 329 U.S. 362, 371 (1946).  Of course, unperfected state liens do not have priority over perfected federal liens. However, Plaintiff relies on <u>Addoms v. Dolan</u>, 67 So.2d 213 (1953), to assert that the state of Florida considers the liens represented in state tax sale certificates to be unperfected.  (Doc. 22, p. 14.)  This extrapolation from the case's use of the term "inchoate" misses the context of <u>Addoms</u>.  The court in <u>Addoms</u> dealt with whether the lien on a piece of property through a tax sale certificate merged with another lien on the land later purchased by the certificate-holder. <u>Addoms</u>, 67 So.2d at 214.  The court held that the two did not merge because neither vested the holder with ownership of the land.  <u>Id.</u> at 214–15.  The court referred to liens *in general* as "inchoate equitable interests," because they do not vest a lien-holder with title to the land.  <u>Id.</u> at 215.   The court was not suggesting that they were un-perfectable interests; rather, it merely acknowledged that they did not equate to title ownership.  Further demonstrating this distinction, the court then compared the liens at issue to mortgages, which would fail to merge for the same reason.  <u>Id.</u>  Certainly, the court did not mean that mortgages could not be perfected.

Further, it is federal law that has the last word as to whether a state-created lien has acquired sufficient substance and has become so perfected as to defeat a later-arising tax lien. Illinois ex rel. Gordon, 329 U.S. at 371.  This is fortunate as Eleventh Circuit precedent provides guidance more on-point than does Addoms.  The Eleventh Circuit identifies a state tax sale certificate lien as "a perfected and choate lien" that primes a United States lien when the certificate is purchased after the United States' lien is perfected but represents taxes assessed in the year that the United States' lien was perfected.  Atlantic Municipal Corp., 212 F.2d at 711.

This Court is not the first to find, at least implicitly, that state tax sale certificates represent state tax liens, perfected, and thus takes priority, on January first of the year that the property taxes were originally assessed.  This Court makes that holding explicit.  And, because the date of perfection of Defendant's state tax sale certificate lien predates that of the federal judgment lien, the Court finds that Defendant's lien is superior to Plaintiff's.

## CONCLUSION

The Court finds that, between Plaintiff and Defendant, it is Defendant Alumni Partners II, LCC that holds the senior lien.  Accordingly, it is ORDERED AND ADJUDGED that Plaintiff's motion for summary judgment is DENIED, and Defendant's motion for summary judgment is GRANTED.  The clerk is directed to terminate Alumni Partners II, LLC as a party to the case. Because this order conflicts with the Court's order on Defendant's motion to dismiss,[4] that order is VACATED.

DONE AND ORDERED this 3rd day of December, 2008.

---

[4]That motion omitted any argument regarding the relation back of state tax liens.

10

SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record